Receipt number AUSFCC-6284211

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (BID PROTEST)

**DIGISCIENT CORPORATION,**

    *Plaintiff,*

v.

**UNITED STATES,**

    *Defendant.*

Case No. **20-812C**

(Judge _____)

## COMPLAINT

This protest involves Solicitation GS00Q-DR-002-P1P3P4 (the "Solicitation"), issued by the General Services Administration (the "Agency"). Digiscient Corporation protests the Agency's decision not to award it a task order.

### Parties

1.    Digiscient is a Virginia corporation with its principal place of business at 6220 Kilcullen Road, McLean, Virginia 22101.

2.    The Agency is part of the Executive Branch of the United States government.

### Jurisdiction

3.    The Court has jurisdiction over this protest pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, codified at 28 U.S.C. § 1491(b)(2).

**Factual Allegations**

4. One Acquisition Solution for Integrated Services Small Business, or OASIS (SB), is an indefinite-delivery / indefinite-quantity (IDIQ) contract vehicle used to procure a wide range of products and services from the commercial marketplace.

5. OASIS (SB) contracts fall under seven pools. Pool 1 is relevant here, and covers consulting, logistics, engineering, scientific, management consulting, project management, and other professional services.

6. The Agency issued the Solicitation to award multiple OASIS (SB) Pool 1, 3, and 4 IDIQ task orders. OASIS contracts use "standardized labor categories corresponding to the Office of Management and Budget's Standard Occupational Classification ('SOC')" for pricing. The Bureau of Labor Statistics ("BLS") maintains compensation data for each SOC, and publishes national 50th, 75th, and 90th percentile estimates for each.

7. The Agency used BLS's data to establish a range of labor rates (with a minimum and maximum rate) for each of the Solicitation's SOC categories.

8. The Solicitation encouraged offerors to propose single direct labor rates within the provided range for each category. Deviations had to be justified with a clear and convincing rationale.

9. Offerors were to self-score their proposals. The Solicitation contained a self-scoring template for offerors to use.

10. Offerors had to provide a single email address to be used for all communications with the Agency.

11. Offerors were to upload their proposals through the government's Symphony portal, with which the Agency and offerors experienced technical difficulties. On June 27, 2019, Digiscient uploaded its proposal through Symphony. However, Symphony would not allow Digiscient to review its submission and ensure that all documents had uploaded properly.

12. Digiscient's self-scoring, which was submitted with its proposal, indicated that its proposal merited award.

13. Digiscient's submission also identified a point of contact and the single email address for communications with the Agency.

14. On November 15, 2019, the Agency asked Digiscient to justify its direct single rates for two proposed labor categories, both of which fell below the Agency's established range.

15. Digiscient informed the Agency that those rates were typographical errors, but pointed out that its Compensation Plan listed the correct rates for those labor categories. Moreover, Digiscient's Compensation Plan explained its calculations for the questioned rates.

16. The Agency disqualified Digiscient because it did not use the same methodology to calculate its other labor rates. But Digiscient was not required to use the same methodology for each rate / labor category, nor did it indicate that it had done so.

17. Digiscient protested its disqualification with GAO, B-408685.28, B-408685.31. On March 18, 2020, the Agency gave notice of its intended corrective action to reevaluate

Digiscient's labor rates for fairness and reasonableness. Digiscient's protest was dismissed as academic.

18.     The Agency informally indicated that Digiscient had received enough points to receive award.

19.     On April 2, 2020, the Agency asked Digiscient if it submitted a Contractor Teaming Agreement or "CTA" with its proposal. Six days later, Digiscient provided the Agency a sworn declaration from Michael Bame, who testified that Digiscient submitted a CTA with its proposal. However, Mr. Bame also testified that Symphony would not allow Digiscient to confirm that everything had uploaded correctly and its help desk was unavailable to assist. The Agency was and is aware of that offerors frequently experience difficulty uploading documents through Symphony.

20.     Digiscient heard nothing further from the Agency. In mid-June, Digiscient asked the contracting officer for a status update. The contracting officer responded by indicating that he previously emailed award information to two Disgiscient individuals, neither of whom: (a) was the designated point of contract; or (b) received email at the designated email address. In other words, if the contracting officer sent the email at all, he admittedly did not send it to the designated email address established in accordance with the Solicitation.

21.     Neither of the individuals identified as email recipients was able to locate the alleged message, and the contracting officer refused to resend it. Consequently, Digiscient has never been officially notified of the Agency's basis of award or had the opportunity to receive a debriefing.

22.     On information and belief, Digiscient was disqualified for (allegedly) not submitting a CTA.

## Count One
### Arbitrary, Capricious and Irrational Disqualification

23.     Digiscient adopts and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

24.     The Agency had prior knowledge that offerors frequently experienced difficulties uploading materials through the Symphony portal.  The Agency also had sworn testimony that Digiscient timely submitted a CTA, through the Symphony portal, on June 27, 2019, but that known functionality issues with Symphony prevented verification.

25.     Given that knowledge, it was arbitrary, capricious and irrational for the Agency to conclude otherwise and disqualify Digiscient.

## Count II
### Arbitrary and Capricious Failure to Reevaluate

26.     Digiscient adopts and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

27.     The Agency committed to take corrective action and reevaluate Digiscient's proposed labor rates for fairness and reasonableness.

28.     On information and belief, the Agency never honored its commitment, and has not reevaluated Digiscient's proposed labor rates.  Instead, it chose to disqualify Digiscient on an arbitrary, capricious and irrational basis, as described above.

29. The Agency's failure to perform its proposed corrective action was itself arbitrary and irrational.

## PRAYER FOR RELIEF

In light of the foregoing, Digiscient requests that the Court:

A. Declare that the Agency's decision to disqualify Digiscient was arbitrary, capricious and irrational;

B. Declare that the Agency's failure to reevaluate Digiscient's proposed labor prices for fairness and reasonableness was arbitrary and irrational;

C. Require the Agency to re-evaluate Digiscient's proposal, including its CTA and proposed labor rates; and

D. Award Digiscient such other and further relief as the Court may deem just and proper, including, without limitation, bid and proposal costs.

Dated: July 2, 2020

Respectfully submitted,

/s/ Jon D. Levin
Jon D. Levin
W. Brad English
Emily J. Chancey
Michael W. Rich

OF COUNSEL:
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street SW
Huntsville, Alabama 35801
Email: jlevin@maynardcooper.com
       benglish@maynardcooper.com
       echancey@maynardcooper.com
       mrich@maynardcooper.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 2, 2020, I caused copies of the foregoing to be served by electronic mail upon the following:

>U.S. Department of Justice
>Commercial Litigation Branch
>National Courts Section
>P.O. Box 480
>Ben Franklin Station
>Washington, D.C.  20044

        /s/ Jon D. Levin
        Jon D. Levin